UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

VALDISSA ROBINSON AND V.P.,

                    Plaintiffs,                    **MEMORANDUM & ORDER**
                                                   23-CV-2058(EK)(TAM)

          -against-

 ADMINISTRATIVE CHILDREN SERVICES,
 HEATHER DROUGHT, DERIA JAVIER,
 MICHAEL DUNBAR, SOPHIA SMITH, et al.

                    Defendants.

------------------------------------x

VALDISSA ROBINSON AND V.P.,

                    Plaintiffs,

                                                   23-CV-2059(EK)(TAM)

          -against-

 KINGS COUNTY FAMILY COURT, BROOKLYN
 DEFENDERS PRACTICE, HEYDAY MARTEL,
 ROBERT MAE, BRIAN HOLBROOK, et al.

                    Defendants.

------------------------------------x

VALDISSA ROBINSON AND V.P.,

                    Plaintiffs,

                                                   23-CV-2060(EK)(TAM)

          -against-

 NEW YORK STATE COURT APPELLATE
 DIVISION – SECONDARY JUDICIAL
 DEPARTMENT, WENDY GILDIN, et al.

                    Defendants.

1

-----------------------------------x

VALDISSA ROBINSON AND V.P.,

                    Plaintiffs,

                                        23-CV-4276(EK)(TAM)

            -against-

KINGS COUNTY FAMILY COURT; HON. ERIK
S. PITCHAL, RYAN L. DARSHAN, JHONY
PIERRE, et al.

                    Defendants.

-----------------------------------x

ERIC KOMITEE, United States District Judge:

        Plaintiff Valdissa Robinson filed three actions in the
United States District Court for the Southern District of New
York, on behalf of herself and her minor child, V.P.[1]  That court
transferred the cases here.  Plaintiff subsequently filed a
fourth complaint in the Southern District; that too was
transferred here.  These matters, which are defined in the
margin as *Robinson I* through *Robinson IV*, arise from child
neglect and removal proceedings involving Robinson and her
daughter in Kings County Family Court.[2]

---

        [1] Robinson cannot represent her child in this lawsuit.  Generally, a
non-attorney parent cannot appear on behalf of his or her child.  *See Tindall
v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) ("[A] well-
established general rule in this Circuit [is] that a parent not admitted to
the bar cannot bring an action *pro se* in federal court on behalf of his or
her child."); *see also Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)
("[B]ecause *pro se* means to appear for one's self, a person may not appear on
another person's behalf.").  Accordingly, V.P. is dismissed as a plaintiff in
each case without prejudice.
        [2] *Robinson v. Administrative Children Services*, No. 23-CV-2058
("*Robinson I*"); *Robinson v. Kings County Family Court*, No. 23-CV-2059

It is unclear what claims Robinson is bringing; as described below, she does not reference any specific constitutional or statutory provisions.  But she names as defendants various individuals and entities involved in the family court proceeding, including: the Administration for Children's Services ("ACS") and various of its employees; a public defender organization, her court-assigned appellate counsel, and several other attorneys; and the state court judge presiding over the proceeding.  And she seeks specific relief, including this Court's oversight and investigation of ACS, a review of the family court's decisions, and assistance with her housing needs.  Based on this — and her *pro se* status — the Court understands Robinson to be asserting that the state court custody proceedings violated her due process rights.

The Court consolidates these actions and grants Robinson's requests to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 solely for purposes of this Order.  For the reasons discussed below, however, the complaints are dismissed. Robinson is granted leave to file a single, consolidated and amended complaint within thirty days of the date of this Order.

## I.   Background

---

("*Robinson II*"); *Robinson v. New York State Court Appellant Division*, No. 23-CV-2060 ("*Robinson III*"); *Robinson v. Kings County Family Court*, No. 23-CV-4276 ("*Robinson IV*").

Robinson generally seeks federal relief for events that occurred in child neglect and custody proceedings before the Kings County Family Court.  In each federal case, she filed a form complaint for civil action.  She included voluminous attachments, which run more than 700 pages total.  The attachments include copies of court filings related to the neglect proceeding, as well as filings in a Kings County proceeding related to Robinson's involuntary mental health treatment and then court-ordered release.  The allegations in each complaint are discussed below, in Section III(B).

The multitude of state court filings and other documents attached to the complaints provide additional context for Robinson's allegations.  Of note, on February 8, 2021, the Kings County Family Court entered an order removing V.P. from Robinson's custody and temporarily releasing her to her father's custody.  *Robinson IV* Compl. 37, ECF No. 1.  That court also issued various temporary orders of protection against Robinson on behalf of V.P., including on February 8, 2021; March 16, 2021; May 6, 2021; and September 17, 2021.  *Id.* at 28–35.

In an "Order of Fact-Finding and Disposition" dated March 4, 2022, the Family Court Judge, defendant Erik Pitchal, found that Robinson had neglected V.P. and ordered, among other things, that V.P. be released to her father, with four months of ACS supervision.  Judge Pitchal also placed Robinson under

twelve months of ACS supervision, with directions to "[e]ngage in mental health services" and "[o]btain and maintain stable housing and income to support the child." *Robinson I* Compl. 21—24, 29—30, ECF No. 2. On February 27, 2023, V.P.'s father filed a petition for custody of V.P. *Robinson IV* Compl. 10–14.

## II.  Legal Standard

Under 28 U.S.C. § 1915(e)(2)(B), a district court must dismiss an *in forma pauperis* action that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." At the pleading stage, "all well-pleaded, nonconclusory factual allegations" in the complaint are assumed to be true. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).[3] *Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and the Court will read a *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Still, a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Thus, the complaint must plead sufficient facts to "state a claim to

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

relief that is plausible on its face." *Williams v. Bronx Cnty.*
*Child Support Customer Serv. Unit*, 741 F. App'x 854, 855 (2d
Cir. 2018).  A claim is plausible "when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir.
2011).  Although factual allegations in the complaint are
assumed to be true, this tenet is "inapplicable to legal
conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
Moreover, a court must dismiss a case if it lacks subject-matter
jurisdiction, regardless of the merits of the underlying action.
*See Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006).

In reviewing Robinson's complaints, the Court
considers not only their factual allegations, but also documents
attached thereto as exhibits and "matters of which judicial
notice may be taken." *E.g.*, *Roth v. CitiMortgage Inc.*, 756 F.3d
178, 180 (2d Cir. 2014).

### III. Discussion

The complaints assert no clear federal claim and no
other basis for federal jurisdiction.  The first and second
complaints do not refer to any constitutional or statutory
provisions, and both omit the page of the form complaint calling
for a jurisdictional basis.  In the third complaint, Robinson
responded to the question of what constitutional or federal

6

statutory rights have been violated by referring to "False Accusations" without elaborating on what these accusations were or how they support a federal claim; she again references no constitutional or statutory provision.  In the fourth complaint, Robinson responds to the same question by referring to "Family Court," and "Proceedings of Custodial and Order of Protection."

Given Robinson's *pro se* status, the Court construes each complaint as Robinson asserting a federal claim; specifically, the Court understands her as alleging that the circumstances surrounding the deprivation of her parental rights violated the Due Process Clause.  *See generally*, *Lassiter v. Department of Social Service of Durham County,* 452 U.S. 18, 27 (1981); *Nicholson v. Williams*, 203 F. Supp. 2d 153, 233-46 (E.D.N.Y. 2002).  So construed, however, this Court cannot adjudicate Robinson's complaints.  The Court first discusses the doctrines implicated — domestic-relations abstention, *Younger* abstention, and *Rooker-Feldman* — and then considers how they apply to each complaint Robinson filed.

**A.    Legal Background**

1.    <u>Domestic Relations Abstention</u>

Robinson's cases raise domestic relations issues. *See, e.g.*, *Robinson I* Compl. 4-5 (referring to ACS intervention with V.P. and the allegedly false statements ACS has made about Robinson's care of V.P.); *Robinson II* Compl. 3-4, ECF No. 2

(discussing and seeking relief related to the family court proceeding); *Robinson III* Compl. 5-6, ECF No. 2 (describing Robinson's appeal of the ACS-initiated child custody case); *Robinson IV* Compl. 5-6 (outlining the state court proceedings including an ACS child safety conference).[4]  To the extent the complaints implicate such subject matter, this Court must abstain.

The domestic relations abstention doctrine dictates that "federal courts may properly abstain from adjudicating" actions involving domestic relations issues, "in view of the greater interest and expertise of state courts in this field." *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990). "When a case calls for a federal court to interpret state domestic relations law or immerse itself in domestic relations matters, the court must abstain from proceeding with the case due to the state courts' greater interest and expertise in that field." *Evans v. Adams*, 714 F. Supp. 3d 119, 124 (E.D.N.Y. 2024).  This doctrine requires abstention in actions involving or even "on the verge of being about child custody" or other "matrimonial" matters. *Deem v. DiMella-Deem*, 941 F.3d 618, 620,

---

[4] The Court refers to the page numbers assigned by the Electronic Case Filing System ("ECF").

623 (2d Cir. 2019).[5]  As the Second Circuit has explained:

> the existence of a distinct abstention doctrine for
> certain domestic relations disputes is supported by
> the Supreme Court's longstanding recognition — in a
> non-diversity case involving a child custody dispute —
> that "[t]he whole subject of the domestic relations of
> husband and wife, parent and child, belongs to the
> laws of the states, and not to the laws of the United
> States."

*Id.* at 624 (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890)).

Domestic-relations abstention is therefore appropriate
even where a litigant "seeks only damages and does not challenge
the validity of the state court's orders in his divorce and
custody proceedings." *Zappin v. Comfort*, No. 23-cv-7363, 2024
WL 5001624, at *2 (2d Cir. Dec. 6, 2024).  It is enough that the
action at issue "largely has its origins in Plaintiff's personal
divorce and child custody matter" and the litigant is seeking
damages for torts allegedly "committed during . . . custody
proceedings." *Id.*

District courts regularly abstain on this basis in
cases that relate to custody disputes, even when the federal
case is broader than the state court custody proceedings.  *See
Hamilton v. Hamilton-Grinols*, 363 Fed. App'x 767, 768-69 (2d
Cir. 2010) (abstaining where federal employee requested his name

---

[5] "Although the domestic relations 'exception' to subject matter
jurisdiction recognized by the Supreme Court in *Ankenbrandt v. Richards*, 504
U.S. 689 (1992), does not apply in federal-question cases, the domestic
relations *abstention* doctrine articulated in *American Airlines* does." *Deem*,
941 F.3d at 621.

be removed from a loan held with his ex-wife so he could maintain federal employment); *Azaryev v. Flores Garcia*, No. 20-cv-4419, 2023 WL 2652604, at *3 (E.D.N.Y. Mar. 27, 2023) (abstaining from adjudicating constitutional claims related to child custody proceedings asking for compensatory damages).

### 2. *Younger* Abstention

To the extent Robinson requests this Court intervene in ongoing state-initiated custody proceedings, the Court must also abstain under the doctrine set out in *Younger v. Harris*, 401 U.S. 37 (1971).

Under *Younger*, "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). But *Younger* abstention applies only to three categories of state proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). As the Supreme Court has clarified, these "three exceptional categories . . . define *Younger's* scope." *Id.* at 78. If an ongoing proceeding is not in one of these three categories, *Younger* will not support abstention.

*Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 428 (2d Cir. 2015).

"[S]tate-initiated proceeding[s] to gain custody of children" fall within the second *Younger* category.  *Sprint,* 571 U.S. at 79; *Moore v. Sims*, 442 U.S. 415, 423-24 (1979); *see also Davis v. Baldwin*, 594 F. App'x 49, 51 (2d Cir. 2015) (Where "the federal action [at issue] involved an ongoing, state-initiated custody proceeding, the proper basis for the district court's dismissal was the *Younger* abstention doctrine.").  Courts have regularly applied *Younger* to preclude requests to enjoin ongoing state custody and visitation proceedings.  *See, e.g.*, *Hirsch v. Kairey*, No. 22-CV-6716, 2023 WL 4902749 (E.D.N.Y. Aug. 1, 2023) (collecting cases); *Curcio v. Grossman*, No. 22-CV-1648, 2022 WL 767167 at *6-7 (S.D.N.Y. Mar. 14, 2022), *aff'd sub nom. Curcio v. Abrams*, No. 22-693, 2023 WL 31183 (2d Cir. Jan. 4, 2023).

"[A]fter applying the categorical *Sprint* approach," a court may "consider three additional, non-dispositive factors to determine whether abstention is appropriate: 1) whether there is a pending state proceeding, 2) whether that proceeding implicates an important state interest, and 3) whether the state proceeding affords an adequate opportunity for judicial review of federal constitutional claims."  *Lowell v. Vermont Department of Children and Families*, 835 Fed. App'x 637, 639 (2d Cir. 2022); *see also Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir.

2022) (these factors "may . . . further counsel in favor of abstention").  These three additional factors further support abstention here.  Robinson references her ongoing appeal, which demonstrates the state court proceedings are ongoing.  *See generally, Robinson III* Compl. 5-6.  Second, as noted above, family law matters, including issues regarding child custody, implicate "an area of law that federal courts and Congress leave almost exclusively to state law and state courts." *Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018); *see Neustein v. Orbach*, 732 F. Supp. 333, 341 (E.D.N.Y. 1990) ("[I]t hardly bears repeating that state courts have a paramount if not exclusive interest in child custody cases.").  Finally, none of Robinson's allegations suggest that she lacks an adequate opportunity for judicial review of her constitutional claims in a state appellate court. *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010).  "Indeed, the Second Circuit has often recognized the obligation and competence of state courts to decide federal constitutional questions." *Dickerson v. Siegal,* No. 23-CV-3859, 2023 WL 6158833, at *2 (E.D.N.Y. Sept. 21, 2023).

   3. *Rooker–Feldman* Doctrine

  "Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited*

*Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). The doctrine applies if "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Id.* As the Supreme Court has reminded federal courts, *Rooker-Feldman* is a narrow doctrine. "Only when a losing state court litigant calls on a district court to modify or overturn an injurious state-court judgment" should a claim be dismissed under *Rooker-Feldman*; district courts do not lose subject matter jurisdiction over a claim "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292-93 (2005).

Courts in this circuit have consistently held that this doctrine bars them from reviewing a state court's neglect and custody determinations. *See, e.g.*, *J.R. ex rel. Blanchard v. City of New York*, No. 11-CV-841, 2012 WL 5932816, at *4-8 (E.D.N.Y. Nov. 27, 2012); *Allen v. Mattingly*, No. 10-CV-667, 2011 WL 1261103, at *8 (E.D.N.Y. Mar. 29, 2011), *aff'd*, 478 F.

App'x 712 (2d Cir. 2012); *Black v. Ranley*, No. 17-CV-9026, 2018 WL 2766138, at *12 (S.D.N.Y. June 8, 2018).

**B.    Robinson's Cases**

  1.    <u>Robinson I</u>

  In *Robinson I*, Robinson sued ACS and various of its employees. *See Robinson I* Compl. 1-4. She alleges that when she and her daughter were at the hospital a "pediatric nurse social worker" (identified as "Sheryl") asked to speak with them. *Id.* at 4. After speaking with the daughter alone, Sheryl contacted ACS, which initiated an investigation. *Id.* at 5. Robinson represents that ACS accused her of using drugs. *Id.*

  For relief, Robinson requests that the Court "intervene / assist and overview [ACS's] actions, statements, allegations, and accusations" given the "numerous falsified" statements maintained against her and their impact on "many aspects of [her] life." *Id.* She does not, however, specify what these actions were. The documents attached to the complaint provide further insight: ACS initiated the child custody petition in New York Family Court and the family court ordered ACS to supervise Robinson and her daughter. *Id.* at 21-26.

  Robinson requests that the Court intervene, assist with, and oversee ACS's actions in relation to the child neglect and custody proceedings. She does not seek money damages.

*Robinson I* cannot be adjudicated by this Court.  Both the facts
alleged and relief sought "call[ ] for [this Court] to
. . . immerse itself in domestic relations matters." *Evans*, 714
F. Supp. 3d at 124.  The family court is far better situated to
provide the relief she seeks, and the state courts generally
have "greater interest and expertise in that field." *Id.*  This
Court must abstain.

Given that ACS was the entity that initiated the case
below, Robinson may also be asking this Court to intervene in
the child custody proceeding.  *Id.*  Because child custody
proceedings are a category of proceedings where *Younger*-
abstention is appropriate, the Court should abstain.  And
finally, if Robinson is asking this Court to modify the ACS
supervision ordered by the family court, this Court lacks
jurisdiction to do so under *Rooker-Feldman*.

2.   Robinson II

The *Robinson II* complaint names as defendants the
Kings County Family Court and one of its sitting judges; the
Brooklyn Defender Services and several of its attorneys; and an
attorney with the Juvenile Rights Division of the Legal Aid
Society.  *Robinson II* Compl. 4.

Robinson alleges that ACS initiated a child neglect
proceeding against her in Kings County Family Court.  *Id.*  She
asserts that the presiding judge's orders and decisions have

been "falsified and incorrect consistently." *Id.* Robinson also alleges that various documents that she filed — including motions, appeals, and custody applications — have not "been successfully processed or scheduled [for] a hearing date." *Id.* at 5. She asks that this Court review the Kings County Family Court's orders and decisions and "look in depth on the falsified, inadequate, and misconducted [sic] information distributed by" that court. *Id.* at 5. Again, she does not seek damages.

To the extent that Robinson is asking the court to reverse or modify the state court judgment because the judge's orders are "falsified and incorrect," this Court lacks jurisdiction. The *Rooker-Feldman* doctrine makes clear the Court cannot reverse or modify a state-court judgment. And to the extent that Robinson is asking this Court to instead consider how the state court proceedings have violated due process, *Younger* abstention precludes the Court from doing so while the proceedings are ongoing.[6]

---

[6] Robinson's claims against the judge are also likely barred by judicial immunity. The doctrine of judicial immunity protects judges from suit for any action taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* And her claims against the court itself — which may implicate court personnel — may be barred by quasi-judicial immunity, which extends to personnel who perform functions closely associated with the judicial process, including acts by administrative professionals and law clerks "that implement [a judge's] judicial decisions or that are performed . . . under the supervision of" the judge. *McKnight v. Middleton*, 699 F. Supp. 2d 507, 525 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011).

3.    Robinson III

The *Robinson III* complaint names the New York State
Supreme Court, Appellate Division, Second Judicial Department, a
case manager at that court, and Robinson's court-assigned
counsel.  *Robinson III* Compl. 3–4.  Robinson alleges that she
filed an appeal of her family court case and was assigned
appellate counsel.  *Id.* at 5.  According to Robinson, however,
her assigned attorney failed to meet with her in person and
ultimately filed an appellant brief that contained
"falsified/inadequate information which do[es]n't relate or
adhere to [her] ACS-Family Court case."  *Id.* at 6.  As relief,
she requests that the Court schedule a hearing on her appeal.
*Id.*

Again, under *Younger,* the Court may not intervene in
ongoing custody matters in state court.  And even if *Younger*
would not bar court intervention, the domestic-relations
doctrine would; Robinson seeks this Court's aid in child custody
proceedings that fall squarely in the heartland of state-court
expertise.[7]

4.    Robinson IV

Finally, the *Robinson IV* complaint names various
defendants, including the Kings County Family Court, its Clerk

---

[7] Here too, Robinson's claims against the court and case-manager may be
barred by quasi-judicial immunity.  *See McKnight*, 699 F. Supp. 2d at 525.

of Court, the judge presiding over the neglect proceeding, the father of Robinson's child, and multiple individuals associated with ACS.[8]  *Robinson IV* Compl. 1, 4-5.  Robinson recounts some of the factual and procedural history behind her Kings County neglect proceeding, including the January 27, 2021 hospital visit (described also in *Robinson I*) and a "child safety conference" held on February 5, 2021.  *Id.* at 5-6.  She also identifies a virtual hearing scheduled for June 22, 2023 in family court, in what appears to be a separate custody proceeding filed by her daughter's father.  *Id.* at 6.  In this filing, however, the relief she seeks is not directly related to the child neglect proceedings.  Instead, she asks this Court to assist with "shelter issues/eviction" and "housing subsidy voucher issues," given her inability to obtain a "legitimate apartment."  *Id*.

It is not clear whether Robinson is seeking court intervention on issues related to her appeal — as the facts section suggests — or to her housing — as the relief section suggests.  If Robinson is requesting this Court intervene in the family court appeal, that is barred by the *Younger* and the domestic relations abstention doctrines.  If she is requesting assistance with housing issues, this general request is

---

[8] Robinson's case against the presiding judge and court itself are also likely barred by judicial and quasi-judicial immunity.

untethered to any specific constitutional or statutory argument and is outside the scope of the Court's power.

*  *  *  *

The Court therefore abstains from deciding the merits of these cases.

### IV.   Leave to Amend

The Second Circuit has held that leave to replead should be liberally granted to *pro se* litigants. *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once."); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

Robinson may file a single, consolidated amended complaint in No. 22-CV-2058 within thirty days of this Order. Any amended complaint Robinson files will completely replace, not supplement, her prior complaints. Her complaint should comply with Federal Rule of Civil Procedure 8, which requires a "short and plain statement" of the grounds for the court's jurisdiction and of the claim. Robinson must explain the federal laws or constitutional provisions that she believes were violated. She must clearly identify each defendant who violated each such law, explain what they did to cause her harm, and set forth some factual content regarding where and when that harm occurred. Robinson should also state clearly what relief she is

asking for.  If she attaches documents to her complaint, she must explain what each document is and how it relates to her allegations.  And if Robinson wishes her child's claims to proceed, she must obtain legal counsel to represent her child within thirty days of this Order.

If Robinson chooses to file an amended complaint, it must be submitted to the Court within thirty days from the date of this Order, be captioned as an "Amended Complaint," and bear the same docket number as this Order.

## V.    Conclusion

Robinson's motion to proceed *in forma pauperis* is granted solely for purposes of this Order.  Each complaint is hereby dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B).  Robinson is granted thirty days from the date of this Order to amend the complaint.  If Robinson fails to file an amended complaint within the time allowed or cure the deficiencies identified in this Order, she will not have another opportunity to replead.  The case will be dismissed with prejudice, and judgment shall enter.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *IFP* status is denied for the purpose of any appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is requested to mail this Order to the plaintiff, along with forms for filing a civil rights action and an *IFP* application, and to note the mailing on the docket. The Clerk is also requested to mark Case Nos. 23-CV-2059, 23-CV-2060, and 23-CV-4276 as closed.

SO ORDERED.


_/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge


Dated:    March 25, 2025
          Brooklyn, New York